IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DAVID RUSSELL BRANDON                                                    PLAINTIFF

          v.                              Civil No. 04-5027


SUE McDONALD, Nurse,
Benton County Detention Center;
JONELL O'DELL, Nurse,
Benton County Detention Center; and
DR. NEIL MULLINS                                                       DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the civil rights complaint filed

by David Russell Brandon, currently an inmate Arkansas Department of Correction, Varner Unit.

Brandon proceeds pro se and *in forma pauperis*.

An evidentiary hearing was conducted on July 26, 2005. At the conclusion of the

hearing, defendants were directed to submit the following additional documentary evidence: (1)

the daily log from October 17, October 18, and October 19, 2003; and (2) documentation

showing the personnel on duty on October 17, 2003. These materials were submitted and

marked by the court as plaintiff's exhibit five and six, respectively.

## I. BACKGROUND and EVIDENCE PRESENTED

Brandon's claims stem from a period of incarceration at the Benton County Detention

Center (BCDC). Brandon contends his constitutional rights were violated by the defendants'

failure to provide him with necessary medical and/or dental care.

-1-

At the July 26th hearing, the court heard the testimony of the following witnesses: (1) the plaintiff, David Russell Brandon; (2) Fredrick Ward; (3) Kenny Littrell; (4) Brian Kennedy; (5) Gene Hendricks; (6) Denny Birdsong; (7) Pamela Brandon; (8) Hunter Petray; (9) Dr. Neil Mullins; (10) Jonell O'Dell; (11) Sue McDonald; (12) Audry Flowers; (13) Daniel Skorup; (14) Christine Nance (formerly Sharp); (15) Darryl Faulkenbury; and (16) Randy Bryson (formerly McPherson). For purposes of discussion, we will briefly summarize the testimony of the witnesses.

### Testimony of David Russell Brandon

I'm thirty-five years old. I was booked into the Benton County Detention Center (BCDC) on September 24, 2003. *See Plaintiff's Exhibit* 1. I remained at the BCDC until I was transferred to the Arkansas Department of Correction (ADC) on October 30, 2003. I was in convicted status during my incarceration at the BCDC.

I was in the BCDC again for a period of time beginning in December of 2003 or January of 2004. I was transferred to the ADC again in March of 2004.

A medical questionnaire was completed when I was booked in on September 24, 2003. However, there are mistakes on it. *Plff's Ex.* 2. The form indicates I was "hyperglycemic." *Id.* I am "hypoglycemic." As result, I watch what I eat–no caffeine, watch my sugar intake, and eat a balanced diet.

Under additional medical, the form says: "Lt. Ear-Deaf/Back." *Plff's Ex.* 2. I said I was partially deaf in the left ear and also had injured my back. I had strained it on the job site.

-2-

I have always had back problems. I needed to exercise my back because of it. I would do stretching exercises. My hamstrings are tight and cause severe pain. Anytime I have a flare up, I would take Ibuprofen.

I didn't go out for yard call very often. Yard call was not much different than being in the pod. At yard call, you couldn't have any more activity.

On September 24, 2003, I submitted a medical request. *Plff's Ex.* 3 at p. 1. I said I was hypoglycemic and would like to request a proper diet. I also stated I had injured my back in a plumbing accident and would like to request an extra mat. *Id.*

I believe I saw the nurse following this request. If I saw someone after I submitted a request it was the nurse. I didn't get an extra mat. I didn't get a change in my diet or extra food. I think I did get Ibuprofen. However, the nurse would only give me Ibuprofen for a short time.

On September 29, 2003, I submitted a grievance. *Plff's Ex.* 3 at p. 2. I was told by the officer that the nurse was refusing to let me see the doctor. I felt the doctor was the one who needed to evaluate my back. The nurse didn't even evaluate my back.

On September 31, 2003, I submitted a medical request. *Plff's Ex.* 3 at p. 3. I stated I would like to see a dentist to have an infected tooth removed. I additionally stated that I had not received a proper diet yet and my blood sugar count was falling.

I had the problem with my tooth before I was incarcerated. I had recently had a couple of teeth extracted.

On October 1, 2003, I was seen by Dr. Mullins. He checked my back and legs. He checked my tooth and scheduled me for the dentist. He told the nurse to check my blood sugar to get a history of it. At the time, this seemed okay.

-3-

A dental appointment was scheduled. Nurse McDonald checked my blood sugar level. She said they didn't issue two mats. They said my back seemed fine but did give me Ibuprofen.

On October 6, 2003, I submitted another medical request regarding my tooth and back. *Plff's Ex.* 3 at p. 4. I asked if I could maybe be given a soft tray because of my tooth. I also had knots on my back from being inactive and sitting in a hard seat, lying on a hard rack, and walking on a hard concrete surface. I asked if something could be done. I suggested maybe I could be made a trustee or some other solution could be found.

I submitted another request dated October 7th. *Plff's Ex.* 3 at p. 5. I asked if I could see the doctor about my snack at night. I stated I had been steadily losing weight since I had been there and my blood sugar was down in the evening. I also asked if I could be put on a soft diet due to my toothache.

I was seen by Nurse McDonald on October 7th. She rushed me through. I think she said nothing was wrong.

On October 7th, I also submitted a request to go to the law library. *Plff's Ex.* 3 at p. 6. I was working my own case at the time. I had gone through three attorneys. My request was allowed.

I requested law library access again on October 8th. *Plff's Ex.* 3 at p. 7. My request was granted.

On October 11th, I submitted another medical request. *Plff's Ex.* 3 at p. 8. I asked if my blood pressure could be checked. I stated I hadn't been feeling well and asked if I was going to get to see the dentist. I also asked if I could have lotion for my feet.

AO72A
(Rev. 8/82)

On October 16th, I submitted a grievance. *Plff's Ex.* 3 at p. 9. I stated my blood pressure still had not been checked. I had been told I was not on the list to see the doctor. Officer Flowers said I had an attitude and the nurse said I was argumentative. In response, I was told the medical staff made all decisions.

I submitted a request on October 16th to speak to Lt. Hendricks regarding a refusal of medical service. *Plff's Ex.* 3 at p. 10. I stated I needed a different diet, my feet were hurting, and my blood pressure was up. In response, I was told to put in a medical request and that the medical staff makes all decisions.

On October 17th, I went to the dentist. Another inmate was taken at the same time. The dentist removed my tooth. When we were getting ready to leave the dentist's office, I asked the dentist if we were going to get any pain killers. He said that it would be taken care of at the jail.

When we were leaving the dentist's office, I started getting a headache. After we got back to the jail, I saw Deputy Todd Johnson. I asked him if I could get something for pain. He said he would try to get a hold of the nurse. He could not get a hold of her. We did not get a soft tray. But I did get a tray. I was able to eat some of the food on it.

I had a headache. It turned into a migraine. Deputy Birdsong let me go lay down on my rack.

I went to the dentist on Friday the 17th, I didn't get anything for the pain until Monday. I started asking to see the nurse at about noon on the 17th and was told she was not available.

Deputies Faulkenbury, Johnson and Birdsong all told me they had tried to reach the medical personnel and couldn't. Later that evening Faulkenbury told me that the nurse was

-5-

notified but there was nothing that could be done that I would be seen on Monday. Faulkenbury shined a flashlight in my eyes.[1]

On October 18th, I submitted a grievance. *Plff's Ex.* 3 at p. 11. I stated I was very sick and nauseous the prior night. I indicated I was suffering from an intense migraine headache and was not given anything for it. I was shaking from the pain. I was not allowed to see either sargent on duty or the nurse.

On October 20th, I submitted a grievance. *Plff's Ex.* 3 at p. 12. I said I was tired of the medical staff's irresponsible and inhumane treatment of me.

I saw McDonald on Monday and she gave me Ibuprofen. The migraine started to go away on Sunday. By Monday I was feeling better.

McDonald said she had been on vacation. McDonald stated that O'Dell must not have known that it was common practice to give Ibuprofen for pain for those who had gone to the dentist.

On October 23rd, I submitted a medical request. *Plff's Ex.* 3 at p. 14. I indicated my ears were ringing, my back was hurting, I had injured my right shoulder, and needed some creme for my feet.

Shortly after this, I was transferred to the ADC. I was back at the BCDC in December of 2003. I submitted a medical request on December 6th. *Plff's Ex.* 3 at p. 15. I stated I had been on treatment for sores in my mouth at the ADC and also on sinus medication. I asked to continue the treatment.

---

The log submitted as *plaintiff's exhibit* 5 contains no notations on October 17th, 18th, or 19th, regarding Brandon's requests for medical attention or any indication that efforts were made to contact Nurse O'Dell or other medical personnel.

AO72A
(Rev. 8/82)

I submitted a medical request on January 24, 2004. *Plff's Ex.* 4 at p. 1. My prescription was being incorrectly dispensed. The problem got straightened out.

On February 6th, I submitted a request because I was congested. *Plff's Ex.* 4 at p. 2. In response, I was told I would be seen by the doctor on Tuesday.

On February 12th, I submitted a request because I had an appointment for eyeglasses at the ADC that I missed when I was transferred to the BCDC. *Plff's Ex.* 4 at p. 3. I asked if there was anything they could do to get me glasses. In response, I was told they did not supply eyeglasses.

On February 15th, I submitted a medical request because I had a sore in my mouth. *Plff's Ex.* 4 at p. 4. I did see the doctor sometime about this and he used silver nitrate.

On February 22nd, I submitted a medical request because of dry skin. *Plff's Ex.* 4 at p. 5. I was given hydrocortisone creme in response.

On February 29th, I submitted a request for antifungal and hydrocortisone creme. *Plff's Ex.* 4 at p. 6. I submitted another request for antifungal and hydrocortisone creme on March 2nd. *Plff's Ex.* 4 at p. 7.

On March 9th, I submitted another request about needing eyeglasses. *Plff's Ex.* 4 at p. 8. I saw the doctor in response. He told me they did not provide eyeglasses and there was nothing he could do.

On March 10th, I submitted a medical request because my right shoulder was hurting. *Plff's Ex.* 4 at p. 9. I stated I had a torn rotator cuff.

I saw the doctor in response. He said they didn't operate on the rotator cuff.

I still haven't had the torn rotator cuff fixed. The ADC cannot afford to fix it.

-7-

On March 11th, I submitted a medical request because of stress. *Plff's Ex.* 4 at p. 10. I had been moved to E-103 by myself because of an incident. I saw the doctor and he gave me medication to calm me down.

On March 20th, I submitted a medical request because of a sore at the back of my mouth. *Plff's Ex.* 4 at p. 11. I was given an antibiotic.

On March 25th, I submitted a medical request because of stress. *Plff's Ex.* 4 at p. 12. I submitted another request on March 29th because of stress. *Plff's Ex.* 4 at p. 13. I stated I could not sleep and had a headache. I was given medication. I believe it was Amitriptylene.

On April 1st, I submitted a medical request. *Plff's Ex.* 4 at p. 14. My right leg was swelling and it appeared to be infected.

The nurse gave me antibiotics. On Monday I saw the doctor. He lanced it and changed the prescription to something stronger. I don't know if it was a spider bite or some type of staph infection.

When I was a free person, I didn't go to the doctor as frequently as I did while I was incarcerated. However, I could get some of the stuff at Wal-Mart. I could just buy hydrocortisone creme, anti-fungal creme, Ibuprofen etc.

I've had migraines since I was ten. I have them sporadically. I've had back pain since I was a teenager.

I believe Nurse McDonald exhibited deliberate indifference to my medical needs by not taking my blood sugar level like she was directed to by the doctor. She took it one time. She was supposed to do it three or four days in a row to get a history. She only checked it three or

AO72A
(Rev. 8/82)

four times total during my entire incarceration at the BCDC. She did start my night-time snack but when I came back to the BCDC the second time, I didn't get it.

I didn't submit a grievance about not getting the HS snack when I returned from the ADC. I mentioned it to the nurse and she said I had to go through the whole process again. She also mentioned the process had changed. I didn't feel like arguing about it.

Nurse O'Dell was the nurse working the day I went to the dentist. Nurse McDonald told me Nurse O'Dell didn't know the procedure. Nurse McDonald said Nurse O'Dell should have provided me something for pain relief.

Dr. Mullins is the one required to give me a snack and prescribe medication. He didn't give me anything when I came back from the dentist. I didn't receive a snack when I came back to the BCDC the second time. My blood sugar level was not checked.

### Testimony of Fredrick Ward

I'm thirty-eight years old. I'm currently in the ADC. I was in the BCDC from August 14, 2003, until the end of April 2004.

I recall the October 17, 2003, incident. I was in the same pod. When Brandon got back from the dentist, he was complaining of a headache. Finally, he couldn't sit up straight. He laid down in front of the cell door. A deputy saw him.

He was visibly in pain. Brandon never got anything for the pain.

I helped write the grievance on October 18th. He brought the form to me and asked me to write it because he couldn't write. He told me what to write and I wrote it.

It was like his eyes were crossed. He was hurting. He didn't even play dominos.

I talked to the guards. I told them Brandon was hurting. They gave him some Aspirin.

-9-

### *Testimony of Kenny Ray Littrell*

I'm twenty-four years old. I'm an ADC inmate. I was in the BCDC from mid-October 2003 until January of 2004.

On October 17, 2003, I was in the cell with Brandon. He went to the dentist and came back. He began complaining of a headache. He was laying on the floor wrapped up. The light was hurting him.

I was on the bottom bunk. I pushed the button. The guard came up and asked me to switch bunks with Brandon. I believe Brandon slept on the floor all night. He couldn't get up. I believe Faulkenbury came in and shined a light in Brandon's eyes.

Brandon tried to get medication. I can't recall he got any. Brandon started feeling better a couple of days later.

### *Testimony of Brian Kennedy*

I am twenty-six years old. I was incarcerated at the BCDC at the same time Brandon was.

All they do at the BCDC is provide Ibuprofen. Grievances don't do any good.

On October 17, 2003, Brandon was with me when we went to the dentist. I had a tooth pulled too. The dentist said he would prescribe some pills. He said to take the pills. He wrote it down. He said this is what you will be taking but they might give us a different prescription when we got back to the jail.

When we got back to the jail, it was lunch time. We asked if we could have a soft tray and the medicine. All they had were regular trays–hard food. We ate what we could.

Nurse McDonald had said we would automatically get a soft tray and medication. She said this before we went to the dentist. After we went to the dentist and got back to the jail, there

AO72A
(Rev. 8/82)

was no one working. The officers said they would get a hold of the nurse. They couldn't get her. No one was available.

I was really in pain. It was Monday before we got anything.

We would go up to the window or door and push the button. When someone would answer, they would say this better be an emergency. It was not an emergency to them.

Brandon was in pain too. Usually we played cards or dominos. He didn't feel like it and kept his head down most of the time.

### *Testimony of Lt. Gene Hendricks*

I was a lieutenant at the BCDC. I left my employment there in July of 2004.

I spoke with Brandon several times about his medical needs. I spoke with him once about a mattress. I told him I couldn't prescribe a mattress that it had to be done by the nurse.

I spoke with him once regarding the doctor. I told him the medical staff made all medical decisions.

Brandon complained about a spider bite. I sent him to medical for that. I believe it was lanced.

I saw spoke with him once about a headache. I gave him a medical request.

I was in the pods or in the pod control office frequently. I saw Brandon in the pods the majority of the time.

Grievances normally went to the captain. In the captain's absence, I would see the grievances.

AO72A
(Rev. 8/82)

I saw Brandon once about his request for glasses. He asked me to get him glasses. I told him the medical personnel have the final word on all medical decisions. They have the final word on what is provided. I cannot make medical decisions.

### Testimony of Denny Birdsong

I am a former BCDC employee. I was a jail sargent. I left in June of 2005.

I vaguely remember Brandon. I have no recollection of his visit to the dentist.

The general practice was that if someone was in pain and hurting, I would let him lay down and make sure he was watched.[2]

### Testimony of Pamela Brandon

I am David Brandon's Mother. He has been a patient of Dr. Harmon.

David was diagnosed with scoliosis. He was told to exercise to strengthen the muscles in his back and legs. He complained of back problems when he was working in the plumbing industry.

David has suffered migraines. I recall they stared during a Judo class. Migraines run in the family.

### Testimony of Captain Hunter Petray

I am the jail administrator at the BCDC. I have occupied this position since 2003.

The BCDC has a policy regarding the provision of health services to detainees. *Defendants' Exhibits* 1 & 2. Detainees put in written medical requests. A form is provided for this purpose. The detainee just circles whether the form is being used to submit a grievance, a

---

According to the shift activity report for October 17, 2003, Birdsong worked the evening shift (3:00 p.m. to 1:00 a.m.). *Plff's Ex.* 6.

request, or a medical request.  During the week, there is a daily sick call.  Medical requests are addressed during sick call.

We have one full-time doctor and one full-time nurse.  They work weekdays.  On the weekends, they are on call.

If something happens when the medical staff are not at the facility, they may be contacted by phone.  If the jailers believe the detainee's complaint is legitimate, the jailers are required to call the medical staff.  If a detainee has a major problem, the detainee can be taken to the hospital right then.

Deputies cannot give out medication without the approval of the nurse and/or doctor. The  order can be given over the phone.  Medication is logged and when distributed the detainee signs for it.  Some of the medication is in individual packages or blister packages.  Other medication is common stock and is not individually packaged.

Generally, the sargent is the one to call the medical staff.  If there is an emergency and the medical staff is unreachable, we can send the detainee to the hospital.  Severe pain qualifies as a medical emergency.  I do not recall the medical staff ever being unreachable.

### Testimony of Dr. Neil Mullins

I am the medical director of the medical department at the BCDC.  I take care of the detainees' medical needs as best I can.

I saw Brandon on October 1, 2003.  *Defts' Ex.* 5 at p. 1.  I noted he had a history of hypoglycemia and that he needed to have his teeth checked.

I found the diagnosis of low blood sugar questionable. His blood sugar level was 83 mg. three hours post-prandial (after a meal). We really want to know what the blood sugar level is at two hours post-prandial.

I decided to re-evaluate his sugar history in two weeks. I directed that two blood glucose tests be taken two hours post-prandial. The tests I ordered were done.

Hypoglycemia means low blood sugar. The blood sugar level drops below the 70-110 range. People can have hypoglycemia and if they eat properly they might have no problem. They cannot skip meals. They must eat regularly. The main symptom is weakness. If the hypoglycemia is severe, the person might need a protein snack two hours after a meal.

In general, I'm familiar with the jail diet. The diet should be sufficient to maintain a blood sugar level within the normal range. It is normal for there to be some variance.

The nurse draws the blood sample and it is sent out. According to my records, we did about six blood tests on Brandon. On September 26th his glucose was 116. This is actually a little higher than the high end of the normal range, which is from 70 to 110. However, not high enough to be worried about and it certainly does not indicate low blood sugar.

On October 1st his glucose was 83 which is normal. On October 2nd it was 70 which is normal. These blood tests all fell within the normal range or close to it. I wouldn't necessarily prescribe a bedtime (HS) snack. If I had tested him and he had tested low, I would have given him a HS snack. If his glucose level had dropped to 60 or 55, I would say it fell.

I didn't order an HS snack for Brandon. However, it was okay that it was given to him.

He had a chip on his molar. I decided to refer Brandon to a dentist to let the dentist evaluate it. I didn't prescribe any pain relieving medication.

-14-

If October 17th was a Friday, I was not there. I carry a beeper and a cell. If they have a problem, they call me. If they call, I can phone in medication. I was not called about Brandon having severe pain.

I don't believe I saw Brandon on October 20th. I have given the nurse permission to okay giving a detainee Ibuprofen if a detainee has minor pain. She always double checks with me or lets me know.

I saw Brandon on December 8th. *Defts' Ex.* 5 at p. 2. He had multiple complaints. He complained of pain in his right lower back. He also stated he had a torn right rotator cuff and some kind of sore in his mouth. I was never told he had scoliosis.

Examination of his back revealed a negative straight leg raising test. I saw no reason he should have pain pills every day for his back.

He did have a torn rotator cuff. This would only hurt when he raised his arm in a certain position. It would take a surgical procedure to repair this and I concluded he did not need any treatment at that time.

He had a small sore above his right upper incisor. I put silver nitrate on it. I prescribed Pen-VK 500 mg., three times a day, for ten days. I also prescribed Ibuprofen 600 mg., twice a day, for two days. I explained I would not give him medicine every day for his back.

### Testimony of Nurse Jonell O'Dell

I'm employed at Washington Regional Medical Center. In 2003, I filled in at the BCDC when Nurse McDonald was on vacation.

I was working on October 17, 2003. I was there until 1:00 p.m. I was not aware Brandon had been taken to the dentist.

-15-

I was on call on October 18th and 19th. On Monday, October 20th, McDonald was back.

I have no recollection of Brandon or his headache. I didn't get a call over the weekend. My pager was on and did not go off.

On other weekends when I was on call, I have gotten calls from deputies. If a new inmate was brought in who was on medication, I would get a call. If someone was in pain from a headache or toothache or needed to be sent to the emergency room, I would get calls. It was more unusual for me not to get calls than for me to get calls.

Had I received a call about Brandon, I would have ordered Ibuprofen. The jailers had my home phone number, my cell number, and I had a jail pager and a hospital pager. There were several ways the jailers could have reached me.

### Testimony of Nurse Sue McDonald

I have been employed as a nurse at the BCDC for over seven years now. A medical record is kept of all action I take or Dr. Mullins' takes with respect to inmates.

I saw Brandon on September 26, 2003. *Defts' Ex.* 3 at p. 1. He stated he had back problems and wanted an extra mat. He also claimed he was hypoglycemic and got extra food at night.

Brandon's two hour post-prandial blood sugar was 116. This is very good. It was high but not worrisome.

We don't give mats. The doctor would have to do that. I don't do it. You would have second mats everywhere.

On September 30th, Brandon's two hour post-prandial blood sugar was 70. This is still okay. I gave him Ibuprofen for four days for back and tooth pain. No HS snack was required.

-16-

On October 1st, Brandon saw the doctor. I did another blood sugar it was 83. The doctor ordered two more blood sugar levels to be taken. I also set up a dental appointment on October 17th for Brandon.

On October 2nd, I gave Brandon hydrocortisone creme and antifungal creme. His blood sugar level was 70.

On October 3rd, I authorized a HS snack for Brandon. I was just afraid his asking for the night-time snack was going to be an everyday occurrence and just did it to pacify him.

On October 7th, I saw Brandon. He was complaining of back problems. He got on the examination table without problem. He was ambulating without problems. He claimed he had a broken back. He also asked for a soft tray.

But then he asked if he could be a trustee. I was really surprised by this. Trustees are not allowed any type of medication. Here he was voicing many complaints but then asking to be a trustee. His blood sugar level was 81.

If I couldn't handle a detainee's medical problem, I sent him to see the doctor. Brandon was not hobbling around and did not have any overt symptoms. He did not seem to be in pain.

On October 8th, Brandon's blood sugar level was 88. This test was taken approximately two and one-half hours after mealtime. *Defts' Ex.* 3 at p. 1.

On October 17th, Brandon went to the dentist. Our dentist never sends anything in the way of prescriptions. He is well aware of the fact that we don't give any narcotic drugs in the BCDC.

I was on vacation on the 17th. Jonell O'Dell was working. She has a pager.

AO72A
(Rev. 8/82)

On October 20th, I saw Brandon. His blood pressure was 130/80 which is normal. I gave him 600 mg. of Ibuprofen right away and ordered it to be repeated three times a day for four days. If Ibuprofen is taken over a long period of time, it can cause heart attacks and hardening of the liver. His blood sugar was 85. I also ordered hydrocortisone creme.

On January 30, 2004, I gave him hydrocortisone creme. On February 10, 2004, Brandon saw the doctor and was given decongestant for five days.

I don't recall Brandon requesting a HS snack when he was in the BCDC in 2004. I gave him a HS snack primarily in 2003 to pacify him.

On February 17th, I saw Brandon. I noted he had dry scalp. I also noted the sores in his mouth had healed. On February 25th, I saw gave him antifungal creme. On March 3rd silver nitrate was applied to a small chancre sore on the inside of his lip.

On March 10th, Brandon saw the doctor. Brandon wanted eye glasses. We don't supply glasses.

We keep medication records for each detainee who receives any type of medication. I write out the name of the medication and the dosage. When the medication is distributed, the deputy signs or initials the medication sheet and the detainee initials the sheet. According to Brandon's medication records, he was given Avelox, a high powered anti-biotic, Naproxen, a high powered Aspirin, and Cimetidine, which is similar to Zantac for his stomach. *Defts' Ex. 6.* He also received at various times hydrocortisone creme, anti-fungal creme, Ibuprofen, Pen-VK (an antibiotic), Amitriptyline, and Cephalexin. *Id.*

### *Testimony of Deputy Audry Flowers*

I don't recall anything about Brandon going to the dentist or asking for medical attention afterwards. I don't even recognize his face.

### *Testimony of Deputy Daniel Skorup*

I am a transportation deputy. I occupied this same position in 2003.

I don't recall transporting Brandon to the dentist. I don't recall the dentist ever prescribing medicine.

### *Deputy Christine Nance (formerly Sharp)*

I worked at the BCDC in 2003 and in 2004. I was an intake officer.

I did the intake on females. You have them take their shoes off, pat them down, ask if the have any medical problems, any suicidal ideas, and if they are on any medication.

I had no intake duties with respect to Brandon. It would have been Kathryn Nolan.

### *Deputy Darrell Faulkenbury*

I'm currently a sargent with the Benton County Sheriff's Office. In 2003 and 2004, I was a deputy at the BCDC.

I don't recall anything out of the ordinary regarding Brandon's condition after he was at the dentist. I have never carried any type of flashlight, pin light, or light of any kind into the jail.

I call nurses on the weekends regularly. I never had a problem were I couldn't get a hold of someone. If I couldn't get the nurse, I would call the doctor. But, I have always been able to get the nurse.

-19-

In October of 2003, on the evening shift, I was not acting sargent. I don't recall if I worked on October 17th.[3] If I was working, I don't know if it would have been day shift or night.

I may have told Brandon I notified the nurse about him but I don't recall. I wouldn't have told him the nurse was unavailable because I have always been able to reach the nurse. I know I didn't shine a flashlight in his eyes or face because I have never had a flashlight in the jail.

**Testimony of Deputy Randy Bryson (formerly Randy McPherson)**

I don't recall taking Brandon to the nurse on October 20, 2003. I have no recollection of that at all.

## II. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999), *cert. denied*, 531 U.S. 819, 121 S. Ct. 60, 148 L. Ed. 2d 26 (2000).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

---

According to the shift activity report, Faulkenbury worked the evening shift (3 p.m. to 1:00 a.m.) on October 17, 2003. *Plffs' Ex.* 6.

In the case of dental care, it has been said that "'[d]ental care is one of the most important medical needs of inmates.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)(*quoting Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). Further, cases have held that the Eighth Amendment requires that "prisoners be provided with a system of ready access to adequate dental care." *Hunt v. Dental Department*, 865 F.2d 198, 200 (9th Cir. 1989)(internal quotation marks and citation omitted).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239.

Thus, mere delay, in the provision of medical or dental treatment, without more, does not amount to an Eighth Amendment violation. It is only when the delay is harmful that the Eighth Amendment is violated. *See e.g., Dulany*, 132 F.3d at 1239; *Shapley v. Neveda Bd. of State Prison Commissioners*, 766 F.2d 404, 407 (9th Cir. 1985).

With respect to Nurse O'Dell, Brandon contends she exhibited deliberate indifference by failing to ensure he received pain medication when he returned from the dentist on October 17th. Furthermore, he contends she failed to make herself available on the 18th and the 19th.

Although she was at work on October 17th until 1:00 p.m., Nurse O'Dell testified that she was unaware of the fact that Brandon was taken to the dentist that day. She also testified that she was not contacted by any BCDC personnel on October 17th, 18th, or 19th, regarding Brandon's need for pain medication or his migraine headache.

While Brandon maintains O'Dell should have known about his visit to the dentist, no testimony was offered to contradict her testimony that she did not know. Nor was there any evidence presented suggesting a phone call was placed to O'Dell regarding Brandon. In short, there is nothing to establish that O'Dell was aware of the fact that Brandon was in pain from the tooth extraction or suffering from a migraine headache.

AO72A
(Rev. 8/82)

Nothing in the record establishes the failure of Nurse O'Dell to know of the dentist appointment was caused by anything more than a mistake or negligent conduct on her part in failing to check the schedule of detainees being sent out for medical or dental treatment that day. Negligence is, of course, insufficient as a matter of law to establish liability under § 1983.

Brandon contends Nurse McDonald exhibited deliberate indifference towards his serious medical needs by failing to establish a history of his blood sugar level as directed by Dr. Mullins. He also states she failed to provide him with a bedtime (HS) snack when he returned to the BCDC the second time.

With respect to Dr. Mullins, Brandon contends Dr. Mullins was required to give Brandon a HS snack, prescribe medication, and monitor his blood sugar level. Brandon also objects to Dr. Mullins' decision not to do anything about Brandon's torn rotator cuff and Dr. Mullins' decision to only give Brandon Ibuprofen for very limited periods for his constant back pain.

According to Brandon's medical records, his blood sugar level was tested on September 26, 2003, September 30th, October 1st, October 2nd, October 7th, October 8th, and October 20th. Dr. Mullins testified, and his records reflect, that on October 1st he only ordered Nurse McDonald to take two more blood sugar tests. Four more tests were taken during the month of October and on October 3rd, Nurse McDonald also authorized a HS snack for Brandon.

Both Dr. Mullins and Nurse McDonald testified that each time Brandon's blood sugar level was tested, with the exception of one time, it fell within the normal range. The one time the level fell outside the normal range it was higher than normal, although not at an alarming level. Certainly this reading was not indicative of hypoglycemia, or low blood sugar.

-23-

We find no evidence of deliberate indifference on Nurse McDonald's or Dr. Mullins' part in connection with their monitoring of Brandon's blood sugar level. Although not checked as often as Brandon would have liked, his glucose level was checked on multiple occasions. As noted above, with the exception of one occasion it fell within the normal range each time. Brandon was seen by the nurse and/or the doctor on other dates and did not complain of suffering ill effects from low blood sugar.

With respect to his request for a HS snack when he returned to the BCDC for the second time, Brandon filed no grievances regarding his request for a snack. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies on each claim. *Booth v. Churner*, 532 U.S. 731, 738-39, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002); *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). He therefore cannot pursue this claim.

Brandon's other claims against Dr. Mullins and Nurse McDonald fail as a matter of law. Brandon essentially disagrees with the medical decisions made by Dr. Mullins and Nurse McDonald. A mere disagreement over the timing and type of medical or dental treatment is not actionable. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(prison officials do not violate the Eighth Amendment when, in exercising professional judgment, they refuse to implement inmate's requested course of treatment). Even if Dr. Mullins or Nurse McDonald could be said to have been negligent or careless in their care of Brandon, it is well established that medical malpractice does not amount to an Eighth Amendment violation. *Harrison*, 219 F.3d at 139 ("This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus

-24-

of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady.").

The undisputed facts establish the following: Brandon's blood sugar level was checked on a number of occasions; Brandon was given an HS snack starting on October 3rd; Brandon was referred to a dentist within a day of his first medical request mentioning an infected tooth; he was seen by the dentist less than three weeks after his initial request for dental care; both Nurse McDonald and Dr. Mullins evaluated Brandon's complaints of back pain; Dr. Mullins examined Brandon's shoulder with the torn rotator cuff; Brandon was prescribed medication on a number of occasions; and he received all prescribed medication. The decisions that Brandon did not need treatment for his torn rotator cuff at the time, or medication for his back everyday, or an extra mattress because of his back, are decisions that are not subject to challenge.

With respect to the failure of anyone at the BCDC to get a hold of medical personnel on October 17th, 18th, or 19th, there is no evidence suggesting the medical personnel were in anyway responsible for this occurring. There was a policy in place providing for off duty medical personnel to be contacted when necessary. Although Dr. Mullins and Nurse McDonald were unavailable, Nurse O'Dell was available and on call. All BCDC personnel who testified on the subject indicated they had been able on various occasions to reach off duty medical personnel. Clearly no evidence was introduced suggesting any of the named defendants, Nurse O'Dell, Nurse McDonald, and Dr. Mullins, were contacted regarding Brandon's condition or were involved in deciding whether Brandon needed medical attention during this time frame.

AO72A
(Rev. 8/82)

*Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

### III. CONCLUSION

I therefore recommend that judgment be entered in favor of the defendants and this case be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of August 2005.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)